DAVIS WRIGHT TREMAINE LLP
  Jacob M. Harper (SBN 259463)
  *jacobharper@dwt.com*
  James H. Moon (SBN 268215)
  *jamesmoon@dwt.com*
  Peter Bae (SBN 329158)
  *peterbae@dwt.com*
865 South Figueroa Street, 24th Floor
Los Angeles, CA 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

*Attorneys for Defendant*
*The Kroger Co.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PHILLIP WHITE, individually and on behalf of all others situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE KROGER CO., and FRUIT OF THE EARTH, INC.,<br><br>Defendants. | Case No. 3:21-cv-08004-RS<br><br>**DEFENDANT THE KROGER CO.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[*Proposed Order Filed Concurrently*]**<br><br>Date:          February 24, 2022<br>Time:          1:30 p.m.<br>Courtroom:   3 |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 24, 2022 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of the above-captioned Court located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant The Kroger Co. (Kroger) will move the Court for an order dismissing with prejudice the First Amended Complaint (FAC) filed by Plaintiff Phillip White.

Kroger seeks an order dismissing:  (1) all claims based on the "reef friendly" product labeling as this statement is non-actionable puffery upon which no reasonable consumer could rely; (2) all claims in deference to the Food and Drug Administration's primary jurisdiction doctrine; (3) all claims with respect to the sixteen unpurchased sunscreen products enumerated in the operative First Amended Complaint because Mr. White lacks Article III and statutory standing regarding those products; (4) all claims Mr. White purports to bring on behalf of a nationwide class for lack of constitutional standing; (5) all claims as Mr. White failed to plead fraud with requisite particularity in accordance with Federal Rules of Civil Procedure 9(b); (6) the fourth cause of action for breach of warranty because Mr. White has not shown the existence of any actionable express warranty, nor has he alleged that any of the sunscreen products lacks even the most basic degree of fitness for ordinary use; and (7) the fifth cause of action for unjust enrichment because California law recognizes no such standalone cause of action.

This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b).  This Motion is based upon this notice, the attached memorandum of points and authorities, the pleadings and records on file, and upon such other and further matters as may be presented before or at the hearing.

KROGER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
NO. 3:21-CV-08004-RS

Dated:  January 10, 2022

DAVIS WRIGHT TREMAINE LLP
Jacob M. Harper
James H. Moon
Peter K. Bae

By: /s/ Jacob M. Harper
Jacob M. Harper

*Attorneys for Defendant The Kroger Co.*

KROGER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
NO. 3:21-CV-08004-RS

# <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     STATEMENT OF ISSUES TO BE DECIDED ..................................................3

III.    RELEVANT ALLEGATIONS .............................................................................4

IV.     ALL CLAIMS MUST BE DISMISSED, WITHOUT LEAVE TO AMEND ..................5

        A.      Kroger's "Reef Friendly" Label Constitutes Mere Puffery. .....................5

        B.      Mr. White's Action Should be Dismissed in Deference to the FDA's
                Primary Jurisdiction over Sunscreen Labeling Issues. ............................9

V.      ADDITIONAL REASONS JUSTIFY DISMISSAL OF CLAIMS .................................12

        A.      Mr. White Lacks Standing to Assert Most of the Claims.......................12

                1.      Mr. White's Claims Related to the Unpurchased Products Should
                        be Dismissed for Lack of Standing..........................................12

                2.      Mr. White Lacks Standing to Pursue Claims for a Nationwide
                        Class.....................................................................................16

        B.      Mr. White Failed to Plead Fraud with Particularity. .............................17

                1.      Insufficient Claims Regarding the One Purchased Product. ....................18

                2.      Insufficient Claims Regarding the Unpurchased Products.......................20

        C.      Mr. White's Breach of Implied Warranty Claim Should be Dismissed................20

        D.      Mr. White's Unjust Enrichment/Restitution Claim Should be Dismissed. ...........21

VI.     CONCLUSION......................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ahern v. Apple Inc.*,
   411 F. Supp. 3d 541 (N.D. Cal. 2019) ...................................................................6

*All One God Faith v. Hain Celestial Grp., Inc.*,
   2012 WL 3257660 (N.D. Cal. Aug. 8, 2012) ..........................................................9

*Aloudi v. Intramedic Research Grp., LLC*,
   729 F. App'x 514 (9th Cir. 2017) ........................................................................19

*Am. Suzuki Motor Corp. v. Superior Court*,
   37 Cal.App.4th 1291 (1995) .................................................................................21

*Astiana v. Hain Celestial Grp., Inc.*,
   905 F. Supp. 2d 1013 (N.D. Cal. 2012), *rev'd in part*, 787 F.3d 753 (9th Cir.
   2013) .................................................................................................................9, 11

*Atkinson v. Omtron USA, LLC*,
   2012 WL 1288770 (M.D.N.C. May 30, 2012) ......................................................7

*Azoulai v. BMW of N. Am., LLC*,
   2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ......................................................5

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ..............................................................................13

*Brothers v. Hewlett-Packard Co.*,
   2007 WL 485979 (N.D. Cal. Feb. 12, 2007) ........................................................8

*Bruton v. Gerber Prods. Co.*,
   961 F. Supp. 2d 1062 (N.D. Cal. 2013) ..............................................................13

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ............................................................................18

*Carrea v. Dreyer's Grand Ice Cream*,
   2011 WL 159380 (N.D. Cal. Jan. 10, 2011) ........................................................15

*Consumer Advocates v. Echostar Satellite Corp.*,
   113 Cal.App.4th 1351 (2003) ...............................................................................6

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*,
   911 F.2d 242 (9th Cir. 1990) .............................................................................5, 6

v

*Davidson v. Apple, Inc.*,
   2017 WL 3149305 (N.D. Cal. July 25, 2017) ........................................................... 6

*Davis v. Astrue*,
   874 F. Supp. 2d 856 (N.D. Cal. 2012) ................................................................... 12

*Dorfman v. Nutramax Labs., Inc.*,
   2013 WL 5353043 (S.D. Cal. Sept. 23, 2013) ......................................................... 18

*Dysthe v. Basic Research LLC*,
   2011 WL 5868307 (C.D. Cal. June 13, 2011) ........................................................ 14

*Eckler v. Wal-Mart Stores, Inc.*,
   2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) .......................................................... 19

*Edmunson v. Procter & Gamble Co.*,
   2011 WL 1897625 (S.D. Cal. May 17, 2011) ......................................................... 20

*Fraley v. Facebook*,
   830 F. Supp. 2d 785 (N.D. Cal. 2011) ............................................................. 21, 22

*GCB Commc'ns, Inc. v. U.S. S. Commc'ns, Inc.*,
   650 F.3d 1257 (9th Cir. 2011) ................................................................................. 9

*Glen Holly Ent., Inc. v. Tektronix Inc.*,
   343 F.3d 1000 (9th Cir. 2003) .......................................................................... 1, 5

*Granfield v. NVIDIA Corp.*,
   2012 WL 2847575 (N.D. Cal. July 11, 2012) ........................................................ 14

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................................. 18

*Hairston v. S. Beach Beverage Co., Inc.*,
   2012 WL 1893818 (C.D. Cal. May 18, 2012) ........................................................ 14

*Hauter v. Zogarts*,
   14 Cal.3d 104 (1975) ............................................................................................. 20

*Hill v. Roll Int'l Corp.*,
   195 Cal.App.4th 1295 (2011) ................................................................................ 21

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ............................................................................... 13

*Hughes v. Ester C Co.*,
   930 F. Supp. 2d 439 (E.D.N.Y. 2013) .................................................................. 19

*Hydro-Blok USA LLC v. Wedi Corp.*,
   2019 WL 2515318 (W.D. Wash. June 18, 2019) ...................................................7

*In re Actimmune Mktg. Litig.*,
   2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) ....................................................14

*In re Capacitors Antitrust Litig.*,
   154 F. Supp. 3d 918 (N.D. Cal. 2015)...............................................................16

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) ...............................................................17

*In re Clorox Consumer Litig.*,
   894 F. Supp. 2d 1224 (N.D. Cal. 2012)...............................................................8

*In re Dot Hill Sys. Corp. Sec. Litig.*,
   594 F. Supp. 2d 1150 (S.D. Cal. 2008)...............................................................8

*In re Eventbrite, Inc. Sec. Litig.*,
   2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) ....................................................8

*In re Tobacco II Cases*,
   46 Cal.4th 298 (2009) .......................................................................................14

*In re Wells Fargo Mortgage-Backed Certificates Litig.*,
   712 F. Supp. 2d 958 (N.D. Cal. 2010)...............................................................16

*Inter-Mark USA, Inc. v. Intuit, Inc.*,
   2008 WL 552482 (N.D. Cal. Feb. 27, 2008) ......................................................6

*Johns v. Bayer Corp.*,
   2010 WL 476688 (S.D. Cal. Feb. 9, 2010).......................................................15

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .........................................................................18

*Klaehn v. Cali Bamboo, LLC*,
   2021 WL 3044166 (S.D. Cal. June 14, 2021) ....................................................7

*Koens v. Royal Caribbean Cruises, Ltd.*,
   774 F. Supp. 2d 1215 (S.D. Fla. 2011)...............................................................7

*Konik v. Time Warner Cable*,
   2009 WL 10681970 (C.D. Cal. Dec. 2, 2009) ....................................................8

*Kwikset Corp. v. Superior Court*,
   51 Cal.4th 310 (2011) .......................................................................................13

*LaDuke v. Nelson*,
    762 F.2d 1318 (9th Cir. 1985) ...................................................................................16

*Larsen v. Trader Joe's Co.*,
    2012 WL 5458396 (N.D. Cal. June 14, 2012).........................................................14, 16

*Levine v. Blue Shield of Cal.*,
    189 Cal.App.4th 1117 (2010) ...................................................................................21

*Lewis v. Casey*,
    518 U.S. 343 (1996)...................................................................................................16

*Lorentzen v. The Kroger Co.*,
    532 F. Supp. 3d 901 (C.D. Cal. 2021) ...................................................2, 12, 15, 16

*Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours and Co.*,
    2014 WL 4774611 (N.D. Cal. Sept. 22, 2014) .........................................................17

*Loubier v. Allstate Ins. Co.*,
    2010 WL 1279082 (D. Conn. Mar. 30, 2010) ...........................................................8

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).................................................................................................15

*Maronyan v. Toyota Motor Sales, U.S.A., Inc.*,
    658 F.3d 1038 (9th Cir. 2011) ...............................................................................9, 10

*MCI Commc'ns Corp. v. AT&T Co.*,
    496 F.2d 214 (3d Cir. 1974) .....................................................................................10

*Miller v. Ghirardelli Chocolate Co.*,
    912 F. Supp. 2d 861 (N.D. Cal. 2012)......................................................................15

*Mlejnecky v. Olympus Imaging Am. Inc.*,
    2011 WL 1497096 (E.D. Cal. Apr. 19, 2011) ..........................................................15

*Mocek v. Alfa Leisure, Inc.*,
    114 Cal.App.4th 402 (2003) ....................................................................................21

*Neu v. Terminix Int'l, Inc.*,
    2008 WL 2951390 (N.D. Cal. July 24, 2008) ..........................................................19

*Newcal Indus., Inc. v. Ikon Office Sol'n*,
    513 F.3d 1038 (9th Cir. 2008) ...................................................................................7

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008).......................................................................6

*Park v. Welch Foods, Inc.*,
  2013 WL 5405318 (N.D. Cal. Sept. 26, 2013) ........................................................22

*Pfizer Inc. v. Superior Court*,
  182 Cal.App.4th 622 (2010) ....................................................................................16

*PhotoMedex, Inc. v. Irwin*,
  601 F.3d 919 (9th Cir. 2010) ...................................................................................11

*Punian v. Gillette Co.*,
  2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ...........................................................6

*Rasmussen v. Apple Inc.*,
  27 F. Supp. 3d 1027 (N.D. Cal. 2014) .......................................................................5

*Razuki v. Nationstar Mortg., LLC*,
  2020 WL 1478374 (N.D. Cal. Mar. 26, 2020) .........................................................16

*Resnick v. Hyundai Motor Am., Inc.*,
  2017 WL 1531192 (C.D. Cal. Apr. 13, 2017) ..........................................................19

*Robinson v. HSBC Bank USA*,
  732 F. Supp. 2d 976 (N.D. Cal. 2010) .....................................................................21

*Robinson v. Wells Fargo Home Mortg.*,
  2016 WL 6524403 (N.D. Cal. Nov. 3, 2016) ...........................................................22

*Rosal v. First Fed. Bank of Cal.*,
  671 F. Supp. 2d 1111 (N.D. Cal. 2009) ...................................................................22

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) .......................................................................6

*Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*,
  902 F.2d 222 (3d Cir. 1990) ....................................................................................10

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134, 1145 (9th Cir. 1997) .........................................................................2

*Stewart v. Electrolux Home Prods., Inc.*,
  2018 WL 1784273 (E.D. Cal. Apr. 13, 2018) ............................................................8

*Stickrath v. Globalstar, Inc.*,
  527 F. Supp. 2d 992 (N.D. Cal. 2007) .......................................................................6

*Swearingen v. Amazon Preservation Partners, Inc.*,
  2014 WL 3934000 (N.D. Cal. Aug. 11, 2014) .........................................................21

*Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*,
   307 F.3d 775 (9th Cir. 2002) ........................................................................... 9

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
   992 F. Supp. 2d 962 (C.D. Cal. 2014) .......................................................... 19

*Thomas v. Costco Wholesale Corp.*,
   2014 U.S. Dist. LEXIS 46405 (N.D. Cal. Mar. 31, 2014)........................ 13, 14

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) .................................................................................. 16

*U.S. v. W. Pac. R.R. Co.*,
   352 U.S. 49 (1956)........................................................................................... 9

*Van Mourik v. Big Heart Pet Brands, Inc.*,
   2018 WL 1116715 (N.D. Cal. Mar. 1, 2018) ............................................... 17

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...................................................................... 18

*Wedi Corp. v. Wright*,
   840 F. App'x 272 (9th Cir. 2021) .................................................................... 7

*Weinberger v. Bentex Pharms., Inc.*,
   412 U.S. 645 (1973)....................................................................................... 10

*West v. eHealth, Inc.*,
   2016 WL 948116 (N.D. Cal. Mar. 14, 2016) ................................................. 8

*Wigand v. Costech Techs., Inc.*,
   2008 WL 65517 (E.D. Va. Jan. 4, 2008) ........................................................ 8

*Wilson v. Frito-Lay N. Am.*,
   961 F. Supp. 2d 1134 (N.D. Cal. 2013)..................................................... 13, 15

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) ........................................................ 20

**LEGISLATIVE MATERIALS**

Reef Safe Act of 2021, H.R. 4800, 117th Cong. (2021)...................................... 11

**REGULATIONS**

12 C.F.R. § 201.327 ............................................................................................. 10

21 C.F.R. § 10.25(b) ............................................................................................ 11

x

**RULES**

Fed. R. Civ. P. 9(b) ............................................................................3, 14, 18, 20

Fed. R. Civ. P. 12(b)(1) .....................................................................................12

Fed. R. Civ. P. 12(b)(6) .......................................................................................7

**STATUTES**

21 U.S.C. § 337(a) .............................................................................................11

28 U.S.C. § 2072 ...............................................................................................16

Cal. Bus. & Prof. Code §§ 17200 *et seq.*..............................................................5

Cal. Bus. & Prof. Code §§ 1750 *et seq.*...............................................................5

Cal. Civ. Code §§ 17500 *et seq.* .........................................................................5

Cal. Civ. Code § 1780(a) ...................................................................................13

Cal. Com. Code § 2314(1).................................................................................20

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Phillip White insists The Kroger Co.'s (Kroger) sunscreen products labeled as "reef friendly" (the Sunscreen Products) are misleading and falsely advertised based on the threadbare allegation that the ingredients in the Sunscreen Products harm "coral reefs and marine life that inhabits and/or depends on [the reefs]."  (FAC ¶ 2.)

This action, one of five filed by Mr. White's attorneys,[1] appears based on the theory that products labelled according to "friendliness"—such as "pet friendly," "heart friendly," or the claim here, "reef friendly"—are actionable.  Here, Mr. White argues he is entitled to bring suit because Kroger's Sunscreen Products, labeled as "reef friendly," contain certain component ingredients (i.e., avobenzone, homosalate, octisalate, and octocrylene) that he believes can harm coral reefs.  From this, he brings a putative class action based on the one product he did purchase (and sixteen other different products he did not) in a medley of varying sizes and packages, alleging California Consumer Legal Remedies Act (CLRA), False Advertising Law (FAL), Unfair Competition Law (UCL), breach of warranty, and unjust enrichment claims.

All these claims—uniformly based on the "reef friendly" label—fail.  Kroger's motion to dismiss should be granted in full, without leave to amend.

Two initial reasons compel dismissal of all claims without leave to amend.

**1.**     ***Non-Actionable Puffery.***  For starters, Mr. White's claims cannot survive dismissal because the "reef friendly" statement he identifies is non-actionable puffery.  That is, "generalized, vague, and unspecific assertions" about the characteristics of a product constitute "mere 'puffery' upon which a reasonable consumer could not rely."  *See, e.g.*, *Glen Holly Ent., Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003).  In other words, a reasonable

---

[1] On near-identical allegations, Mr. White's attorneys have initiated a crusade against sunscreen products that have representations such as "reef-conscious" and "reef safe" on their labels, by filing four other copycat suits within twelve days of bringing the case-at-bar. *See Moran v. Edgewell Personal Care, LLC* (N.D. Cal.) Case No. 3:21-cv-07669-RS, filed September 30, 2021; *Locklin v. Target Corp. et. al.*, (N.D. Cal.) Case No. 3:21-cv-07936-JD, filed October 8, 2021; *Locklin v. Strivectin Operating Co., Inc.* (N.D. Cal.) Case No. 3:21-cv-07967-VC, filed October 11, 2021; *Moran v. Bondi Sands (USA) Inc.* (N.D. Cal.) Case No. 4:21-cv-07961-JSW, filed October 11, 2021.

consumer simply would not view, let alone rely upon, the "reef friendly" label as a statement of objective fact, as such an amorphous claim of friendliness is tantamount to "exaggerated advertising" that makes no specific representation about Kroger's Sunscreen Products. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (quotations omitted). Mr. White's breach of express warranty claim falls in tandem with his consumer protection claims, as the "reef friendly" representation amounts to nothing more than non-actionable puffery, which cannot constitute an express warranty.

      **2.**     ***Primary Jurisdiction.***  Mr. White's action should also be dismissed or stayed in full in deference to the Food and Drug Administration's (FDA) primary jurisdiction. The FDA has congressionally-authorized, administrative expertise in the area of over-the-counter (OTC) sunscreen product labeling. To that end, the FDA has promulgated the Food, Drug, and Cosmetic Act (FDCA), which regulates various testing and labeling requirements for nonprescription, OTC sunscreens. An inconsistent court-issued ruling on labeling requirements for Kroger's sunscreen products thus runs the risk of undercutting the FDA's expert judgments and authority in this highly regulated space.

      Even if the Court does not dismiss on puffery or primary jurisdiction grounds, additional portions of his claims must be dismissed on other grounds.

      **1.**     ***Lack of Standing.***  Claims for at least sixteen of the seventeen products he sues under must be dismissed for lack of standing, as he has not even purchased these products and therefore could not have been injured by them. *See Lorentzen v. The Kroger Co.*, 532 F. Supp. 3d 901, 909 (C.D. Cal. 2021) ("A plaintiff who is falsely led to buy a product may claim injury resulting from that purchase; the same plaintiff, however, cannot claim injury from similarly false advertising upon which he or she did not injuriously rely (by buying a similar product or otherwise)."). As any purported misrepresentation or omission based on these unpurchased products could not have caused Mr. White injury, economic or otherwise, the claims based on these unpurchased products should accordingly be dismissed for lack of constitutional and statutory standing. Mr. White also cannot bring claims on behalf of a nationwide class, as a

2

named plaintiff does not have standing to assert claims from states in which they do not reside or where they did not purchase the complained-of products.

**2.** *Rule 9(b).* Mr. White failed to plead his claims with sufficient particularity. Each of Mr. White's causes of action sound in fraud, which requires him to plead with heightened particularity in accordance with Federal Rules of Civil Procedure 9(b). But Mr. White has not provided the necessary specifics of Kroger's allegedly fraudulent acts. Mr. White provides no factual or empirical basis to suggest that the one sunscreen product he did purchase harms coral reefs or is not safe for reefs in any way, or that Kroger was aware that the challenged statement at issue was false when made. Further, Mr. White provides no details under the heightened pleading standard (or otherwise) about any injury he suffered on account of the sixteen sunscreen products he has not purchased. Such a conspicuous lack of factual allegations concerning the unpurchased products utterly fails to meet the pleading requirements for fraud, let alone the more liberal pleading standards applicable to all federal claims.

**3.** *Deficient State Law Claims.* Individual claim-specific reasons further compel dismissal. Mr. White's breach of implied warranty claim is ripe for dismissal as he does not even attempt to allege that any of the Sunscreen Products lacks even the most basic degree of fitness for ordinary use. Nor can Mr. White maintain his standalone claim for unjust enrichment, because there is no such claim under California law.

Considering the above, Kroger respectfully requests that the Kroger dismiss this action with prejudice, as amendment would be futile.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether Mr. White's claims should be dismissed as a matter of law because the "reef friendly" product label is non-actionable puffery upon which no reasonable consumer could rely.

2.    Whether this action should be dismissed or stayed pursuant to the FDA's primary jurisdiction doctrine.

3.    Whether Mr. White's claims related to the sixteen unpurchased sunscreen products should be dismissed for lack of Article III and statutory standing.

4.      Whether the putative claims Mr. White purports to bring on behalf of a nationwide class should be dismissed based on lack of constitutional standing.

5.      Whether Mr. White's fraud-based claims should be dismissed as insufficiently pleaded with heightened particularity in accordance with Rule 9(b) of the Federal Rules of Civil Procedure.

6.      Whether Mr. White's breach of warranty claim should be dismissed because he has not demonstrated the existence of any actionable express warranty, and only put forth conclusory allegations to support a breach of implied warranty of merchantability claim.

7.      Whether Mr. White's standalone unjust enrichment cause of action should be dismissed because California law does not recognize such a cause of action.

## III.   RELEVANT ALLEGATIONS

On December 10, 2021, Plaintiff Phillip White filed the operative First Amended Complaint (FAC).  (ECF No. 20.)  As alleged in the FAC, Mr. White is a resident of San Mateo County, California.  (FAC ¶ 8.)  Mr. White claims he purchased the "Kroger® *Sport* Sunscreen, Spray, SPF 50, 5.5-oz" product "for approximately $5.00 at a retail store in or around the County of San Mateo, State of California, in approximately summer of 2021 . . . ."  (*Id.* [alterations omitted].)

The central allegation in the FAC is that the labels of certain Kroger-branded sunscreen products include the statement "reef friendly," and are misleading because the ingredients contained therein harm coral reefs, including the marine life that inhabits the reefs.  (FAC ¶ 2.)  The FAC lists four chemicals that allegedly harm coral reefs:  avobenzone, homosalate, octisalate, and octocrylene.  (*Id.* ¶ 13.)  According to Mr. White, one or more of these ingredients is used in varying levels of concentrations in each of six Kroger-branded Sunscreen Products in a combination of six different sizes, for a total of seventeen products.  (*Id.* ¶¶ 4, 25.)  Mr. White claims that he relied upon the "reef friendly" label in making his purchase of the one sunscreen product mentioned above, and that he would not have made his purchase otherwise.  (*Id.* ¶¶ 8, 34, 77, 109.)

Based on these allegations, the FAC seeks to assert five causes of action on behalf of a "Nationwide Class" of "[a]ll residents of the United States who, within the applicable statute of limitations periods, purchased the Products for purposes other than resale," and on behalf of a "California Subclass" of "[a]ll residents of California who, within four years prior to the filing of [the FAC], purchased the Products for purposes other than resale . . . ."  (FAC ¶ 40 [alterations omitted].)  In particular, the FAC alleges a violation of the UCL, Cal. Bus. & Prof. Code §§ 17200 *et seq.* (First Cause of Action); FAL, Cal. Bus. & Prof. Code §§ 17500 *et seq.* (Second Cause of Action): CLRA, Cal. Civ. Code §§ 1750 *et seq.* (Third Cause of Action); a breach of warranty (Fourth Cause of Action); and unjust enrichment/restitution (Fifth Cause of Action). (*Id.* ¶¶ 51-126.)

## IV.    ALL CLAIMS MUST BE DISMISSED, WITHOUT LEAVE TO AMEND

All of Mr. White's claims, which are premised on friendliness and quibbles with FDA's sunscreen labeling standards, should be dismissed in full.

### A.    Kroger's "Reef Friendly" Label Constitutes Mere Puffery.

Mr. White has failed to allege an actionable misrepresentation under California's consumer protection statutes, as the "reef friendly" statement does not contain any objectively verifiable factual assertion.  As noted above, "generalized, vague, and unspecific assertions" about the characteristics of a product constitute "mere 'puffery' upon which a reasonable consumer could not rely."  *See, e.g.*, *Glen Holly Ent.ha, Inc.*, 343 F.3d at 1015.

As a matter of law, an actionable statement must make a "'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'"  *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1039–40 (N.D. Cal. 2014) (collecting cases); *see also Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (statements are only actionable when they make a claim as to the "specific or absolute characteristics of a product") (quotations omitted); *Azoulai v. BMW of N. Am., LLC*, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017) ("To be actionable, a statement must be 'specific and measurable' and capable of being proven true or false.").

On the other hand, "[a]dvertisements that amount to 'mere' puffery are not actionable because no reasonable consumer relies on puffery." *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998 (N.D. Cal. 2007) (quotations omitted).  "The distinguishing characteristics of puffery are 'vague, highly subjective claims as opposed to specific, detailed factual assertions.'" *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 987 (N.D. Cal. 2009); *accord Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 246 ("The common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions.").  This is especially true where a product may or may not satisfy a plaintiff's subjective expectations for a product.  *See, e.g.*, *Inter-Mark USA, Inc. v. Intuit, Inc.*, 2008 WL 552482, at *10 (N.D. Cal. Feb. 27, 2008) (statements regarding "improvements" and "enhancements" in defendant's product mere puffery because these representations did not make "any verifiable factual representations.") (quotations omitted); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal.App.4th 1351, 1361 (2003) ("Crystal clear" and "CD quality" statements non-actionable puffery because they were "not factual representations that a given standard is met.") (quotations omitted).

On these grounds, courts routinely dismiss California consumer protection law claims premised on unquantifiable and generalized marketing statements of the sort at issue here.  *See, e.g.*, *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 556–58 (N.D. Cal. 2019) ("[C]lear and remarkably vivid," "highest quality," "the most advanced, most brilliant," and "everything is designed to work just the way you expect it to" statements non-actionable puffery) (quotations omitted); *Davidson v. Apple, Inc.*, 2017 WL 3149305, at *11 (N.D. Cal. July 25, 2017) (claims that product was made with "high-quality" materials are "non-actionable puffery" as "[c]ourts across the country have held") (quotations omitted); *Punian v. Gillette Co.*, 2016 WL 1029607, at *9 (N.D. Cal. Mar. 15, 2016) (statement that a consumer "can 'trust' Duralock Batteries" non-actionable puffery because the statement made no specific factual claim about the batteries "[e]ven in the context of a broad advertising campaign"); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (statements of product superiority based on being "faster,

1 more powerful, and more innovative," 'higher performance," "longer battery life," "richer

2 multimedia experience," and "faster access to data" non-actionable puffery) (quotations omitted).

3        "[T]he determination of whether an alleged misrepresentation 'is a statement of fact' or is

4 instead 'mere puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion."

5 *Newcal Indus., Inc. v. Ikon Office Sol'n*, 513 F.3d 1038, 1053 (9th Cir. 2008).

6        The Sunscreen Products' "reef friendly" label is a paradigmatic example of such puffery,

7 as such a nonactionable statement is neither specific nor measurable.  This is because the term

8 "friendly" cannot be quantified and thus measured against consumer expectations.  In other

9 words, there is no objective way to determine whether a product is "friendly" enough to meet

10 any mensurable criteria because one cannot measure the purported friendliness of a product:

11 How would one quantify how "friendly" a sunscreen is to a coral reef?  Are any sunscreens

12 "friendlier" than others?  What is the litmus test for evaluating how "friendly" a sunscreen must

13 be to comply with California's consumer protection laws?[2]

14        ***Underscoring the point, courts within this Circuit and across the country have***

15 ***routinely and consistently held that the term "friendly" is unquantifiable puffery.***  *See, e.g.*,

16 *Wedi Corp. v. Wright*, 840 F. App'x 272, 273 (9th Cir. 2021) (statement that a product was a

17 "user-friendly way to build a water-proof shower or tub surround at a price you can afford . . . is

18 non-actionable puffery"); *Klaehn v. Cali Bamboo, LLC*, 2021 WL 3044166, at *8 (S.D. Cal. June

19 14, 2021) (representation that product was "pet friendly" is "non-actionable puffery"); *Hydro-*

20 *Blok USA LLC v. Wedi Corp.*, 2019 WL 2515318, at *6 (W.D. Wash. June 18, 2019)

21 ("[E]nvironmentally friendly" statement was puffery); *Atkinson v. Omtron USA, LLC*, 2012 WL

22 12887700, at *3 (M.D.N.C. May 30, 2012) ("[T]he alleged representation that the grower

23 contracts were 'grower friendly' constitutes 'puffery.'"); *Koens v. Royal Caribbean Cruises*,

24

25        [2] Consider, for example, the Kroger® *Baby* Sunscreen product, which—according to Mr.
White—contains 5% octisalate and 14.5% zinc oxide.  (FAC ¶ 25.)  Elsewhere, Mr. White alleges
26 that "[m]any environmental organizations have favored mineral active ingredients that provide sun
protection, such as zinc oxide . . . , because they have not been determined unsafe for . . . reefs."
27 (*Id.* ¶ 30.)  Would Kroger, then, not be justified in branding its Baby Sunscreen as "reef friendly,"
since this product contains a higher concentration of zinc oxide as opposed to octisalate?  On that
28 note, is it fair to say that Kroger's *Sport* Sunscreen product, which purportedly contains 4.5%
octisalate, is more "reef friendly" than the Baby Sunscreen?  (*Id.* ¶ 25.)

7

1  *Ltd.*, 774 F. Supp. 2d 1215, 1221 n.8 (S.D. Fla. 2011) ("[F]amily friendly" representation may

2  qualify as "mere puffery"); *Loubier v. Allstate Ins. Co.*, 2010 WL 1279082, at *5 (D. Conn. Mar.

3  30, 2010) ("[F]riendly interaction" was mere "puffing"); *Konik v. Time Warner Cable*, 2009 WL

4  10681970, at *15 (C.D. Cal. Dec. 2, 2009) (promise of "friendly" customer support is "not

5  actionable" because the "descriptive term 'friendly' is entirely vague and subjective.  Like the

6  terms 'crystal clear' and 'CD quality,' the term 'friendly' is not readily verifiable by the use of

7  objective criteria."); *Wigand v. Costech Techs., Inc.*, 2008 WL 65517, at *10 (E.D. Va. Jan. 4,

8  2008) ("[U]ser-friendly" statement is "mere puffing or sales talk").  Even further divorced from

9  the objective and specific guarantees, if any, that a "reef safe" label may provide, the "friendly"

10  term is akin to descriptors like "beneficial" or "favorable" or "advantageous" or "good" or

11  "safe," which are similarly mere puffery because they, too, are vague and unquantifiable terms.

12  *See In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *14 (N.D. Cal. Apr. 28, 2020)

13  (statement of "significant performance advantages" are "inactionable puffery") (quotations

14  omitted); *Stewart v. Electrolux Home Prods., Inc.*, 2018 WL 1784273, at *11 (E.D. Cal. Apr. 13,

15  2018) ("The only alleged misrepresentation dealing with safety indicates the oven 'provides easy

16  self-cleaning while keeping your family safe.' . . . This is not a quantifiable statement or an

17  absolute characteristic about safety that can be measured."); *West v. eHealth, Inc.*, 2016 WL

18  948116, at *7 (N.D. Cal. Mar. 14, 2016) ("[F]avorable impact" statement mere puffery); *In re

19  Dot Hill Sys. Corp. Sec. Litig.*, 594 F. Supp. 2d 1150, 1159–60 (S.D. Cal. 2008) (finding

20  statements referring to an "excellent relationship," "highly positive and mutually beneficial"

21  interactions, and "a success" to be non-actionable puffery) (quotations omitted).

22        For the same reasons, Mr. White's express warranty claim falls together with his

23  consumer protection claims; as mere puffery, the "reef friendly" statement is "also not actionable

24  under a theory of breach of express warranty."  *In re Clorox Consumer Litig.*, 894 F. Supp. 2d

25  1224, 1235 (N.D. Cal. 2012); *see also Brothers v. Hewlett-Packard Co.*, 2007 WL 485979, at *6

26  (N.D. Cal. Feb. 12, 2007) ("[V]ague or highly subjective product . . . claims often amount to

27  non-actionable puffery" and do not constitute an express warranty) (cleaned up).

28

The above makes clear that no reasonable consumer could be misled by non-specific assertions about the Sunscreen Products' friendliness, to coral reefs or otherwise. The "reef friendly" label is an archetype of puffery, and Mr. White's consumer protection action based on this representation must be dismissed in full.

**B.    Mr. White's Action Should be Dismissed in Deference to the FDA's Primary Jurisdiction over Sunscreen Labeling Issues.**

Even if the Court does not dismiss on puffery grounds, it should dismiss the action in deference to the FDA's primary jurisdiction over sunscreen labeling.

Primary jurisdiction is a prudential doctrine which provides that "the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *GCB Commc'ns, Inc. v. U.S. S. Commc'ns, Inc.*, 650 F.3d 1257, 1263–64 (9th Cir. 2011) (quotations omitted). The primary jurisdiction doctrine applies "whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *U.S. v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956).

Courts must defer to an administrative agency "where (1) the issue is not within the conventional experience of judges, (2) the issue involves technical or policy considerations within the agency's particular field of expertise, (3) the issue is particularly within the agency's discretion, or (4) there exists a substantial danger of inconsistent rulings." *Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1048–49 (9th Cir. 2011) (quotations omitted). "Once a district court determines that primary jurisdiction is appropriate, it may either stay proceedings or dismiss the case without prejudice." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 761 (9th Cir. 2015); *accord Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 782 (9th Cir. 2002) ("Normally, if the court concludes that the dispute which forms the basis of the action is within the agency's primary jurisdiction, the case should be dismissed without prejudice so that the parties may pursue their administrative remedies.").

Courts have consistently deferred to the FDA's primary jurisdiction in matters involving regulated product labeling. *See, e.g.*, *All One God Faith v. Hain Celestial Grp., Inc.*, 2012 WL

9

3257660, at *9 (N.D. Cal. Aug. 8, 2012) (recognizing the "importance of deferring to a federal agency's primary jurisdiction where, in order to determine the falsity or misleading nature of a defendant's representations about its products, the court would be required to interpret and apply federal standards governing those products."); *see also Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 231 (3d Cir. 1990) ("We decline to find and do not believe that the district court had to find, either 'as a matter of common sense' or 'normal English,' that which the FDA, in all of its scientific expertise, has yet to determine.").

Analysis of the *Maronyan* factors demonstrates that the same course of action is appropriate here.  First, this case presents an issue of first impression that has not yet been resolved by the FDA or any other authoritative body, i.e., what standards, if any, govern the use of the "reef friendly" label on sunscreen product labeling.  Regarding the second and third factors, the issue indisputably arises in an area over which Congress has given the FDA broad regulatory and enforcement authority; indeed, the FDCA creates an expansive regulatory framework evidencing Congress's express intent that the FDA regulate labeling requirements for nonprescription, OTC sunscreens such as the ones at issue in this lawsuit.  *See* 12 C.F.R. § 201.327 (the FDA's "sunscreen Final Rule," which sets labeling and testing requirements for OTC sunscreens).  Fourth, the considerations of expertise and uniformity also support primary jurisdiction, which is appropriate if the case involves "policy considerations . . . within the agency's particular field of expertise."  *MCI Commc'ns Corp. v. AT&T Co.*, 496 F.2d 214, 220 (3d Cir. 1974).  The FDA has developed expertise in the areas of cosmetic and drug labeling over time that weighs against the development of ad hoc standards through litigation.  *See Weinberger v. Bentex Pharms., Inc.*, 412 U.S. 645, 654 (1973) ("[U]niformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.") (quotations omitted).  As a matter of fact, the FDCA prohibits private enforcement, which underscores the FDA's charge to provide uniform enforcement of cosmetics labeling laws.

10

*See* 21 U.S.C. § 337(a) ("[A]ll such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."); *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010) ("The Supreme Court made clear . . . that this section also limits the ability of a private plaintiff to pursue claims under state law theories where such claims collide with the exclusive enforcement power of the federal government."). The FDA regulations expressly support this conclusion: "FDA has primary jurisdiction to make the initial determination on issues within its statutory mandate, and will request a court to dismiss, or to hold in abeyance its determination of or refer to the agency for administrative determination, any issue which has not previously been determined by the agency or which, if previously determined, the agency concluded should be reconsidered and subject to a new administrative determination." 21 C.F.R. § 10.25(b).

Here, too, a court determination of whether the term "reef friendly" on the Sunscreen Products is false or misleading risks "undercutting the FDA's expert judgments and authority" in the OTC drug space. *Astiana v. Hain Celestial Grp., Inc.*, 905 F. Supp. 2d 1013, 1016 (N.D. Cal. 2012) (quotations omitted), *rev'd in part*, 783 F.3d 753.[3] This is particularly true because the proposed Reef Safe Act of 2021, H.R. 4800, 117th Cong. (2021), would require the FDA to develop labeling criteria and standards for a "reef safe" designation on nonprescription sunscreen similar to the sort at issue here.

Mr. White himself acknowledges that the Hawaii Center for Biological Diversity is currently "petitioning the FDA for a national ban on chemicals . . . in sunscreens that harm and kill the coral reefs," and that a "group of researchers have also petitioned the FDA to remove from sale all sunscreens that contain octocrylene." (FAC ¶¶ 16-17.) In the same breath, Mr. White cites a newspaper publication in which an FDA spokeswoman confirms that the agency wields regulatory powers over certain "products . . . including sunscreen," as well as to a journal article that "discuss[es] FDA regulation of sunscreens . . . ." (*Id.* ¶¶ 17 n.13 & 15 n.18.)

---

[3] On appeal, the Ninth Circuit affirmed that "the district court did not err in invoking primary jurisdiction" as "[o]btaining expert advice from that agency would help ensure uniformity in administration of the comprehensive regulatory regime established by the FDCA." *Astiana*, 783 F.3d at 761.

11

Notwithstanding the above, Mr. White petitions this Court to impose a California-only labeling standard on sunscreen products that is in direct conflict with Congress's intent to ensure nationally uniform standards.  But if this action were to proceed to resolution without FDA input, sunscreen manufacturers would have to decide whether to bring their labeling practices in line with the standard established here, without any FDA endorsement of that standard.  What is more, if opposing counsel's four separate copycat lawsuits, *supra* note 1, proceeded before those courts and different labeling standards governing the "reef friendly" designation were to subsequently issue, there would not even be uniformity among California-only labeling standards, let alone a national standard, for manufacturers to follow—further underscoring why judicially-created relief under state law would be improper.

For the foregoing reasons, Kroger requests that this Court dismiss this action in deference to the FDA's primary jurisdiction.

## V.   ADDITIONAL REASONS JUSTIFY DISMISSAL OF CLAIMS

Even if the Court does not dismiss the complaint outright on puffery or primary jurisdiction grounds, dismissal is warranted for myriad claim-specific reasons.

### A.   Mr. White Lacks Standing to Assert Most of the Claims.

#### 1.   Mr. White's Claims Related to the Unpurchased Products Should be Dismissed for Lack of Standing.

First of all, Mr. White has not been injured by, and therefore lacks standing to sue for, the sixteen products he did not purchase.  *See Lorentzen*, 532 F. Supp. 3d at 909 ("A plaintiff who is falsely led to buy a product may claim injury resulting from that purchase; the same plaintiff, however, cannot claim injury from similarly false advertising upon which he or she did not injuriously rely (by buying a similar product or otherwise).").

For purposes of Rule 12(b)(1), Mr. White bears the "burden of proving standing and subject matter jurisdiction."  *Davis v. Astrue*, 874 F. Supp. 2d 856, 862 (N.D. Cal. 2012) (collecting cases).  To meet that burden and satisfy Article III's case or controversy requirement, a plaintiff in a mislabeling case must allege that he has suffered:  "(1) a concrete, particularized, actual or imminent injury-in-fact; (2) that the injury is traceable to the defendant's action; and (3)

12

that a favorable ruling could redress the injury. . . . Plaintiffs in a case like this one can show Article III standing by alleging that they purchased a product they otherwise would not have purchased, or that they spent too much on such a product, in reliance on a defendant's representations in ads or on labels." *Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134, 1140 (N.D. Cal. 2013) (citation omitted).

In addition to the Article III constitutional requirement that applies to all claims in federal court, injury is a required element of the California causes of action at issue here.  As the California Supreme Court has acknowledged, California voters explicitly incorporated the federal standing requirements into the standing test for the UCL and FAL.  *See Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 320–22 (2011); *see also Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009) ("[T]o plead a UCL claim, the plaintiffs must show, consistent with Article III, that they suffered a distinct and palpable injury as a result of the alleged unlawful or unfair conduct").  "The UCL and FAL [do not only] incorporate the Article III standing requirements, but additionally require that the plaintiff plead an economic injury." *Thomas v. Costco Wholesale Corp.*, 2014 U.S. Dist. LEXIS 46405, at *12 (N.D. Cal. Mar. 31, 2014).  It follows that standing for individuals alleging UCL and FAL claims is limited to persons who "have suffered injury in fact and have lost money or property as a result of the unfair competition." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013) (cleaned up).  "Similarly, for the purpose of bringing a CLRA cause of action, '[a] plaintiff . . . must not only be exposed to an unlawful practice but also have suffered some kind of damage.'" *Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062, 1087 (N.D. Cal. 2013); *see also* Cal. Civ. Code § 1780(a) ("Any consumer who suffers *any damage* as a result of the use or employment by any person of a method, act, or practice declared to be unlawful . . . may bring an action against that person").

To satisfy the injury-in-fact requirement for unfair competition claims, "courts in California require that plaintiffs demonstrate the purchase of products as a result of deceptive advertising. . . . Plaintiffs cannot circumvent the reliance requirement by simply pointing to a regulation or code provision that was violated by the alleged label misrepresentation, summarily claiming that the product is illegal to sell and therefore negating the need to plead reliance."

13

*Thomas*, 2014 U.S. Dist. LEXIS 46405, at *12, 23 (quotations omitted).  To plead actual

reliance, the "plaintiff must allege that the defendant's misrepresentations were an immediate

cause of the injury-causing conduct. . . ."  *In re Tobacco II Cases*, 46 Cal.4th 298, 328 (2009); *In*

*re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *16 (N.D. Cal. Nov. 6, 2009) (this "stringent

[CLRA] standing requirement" can only be fulfilled by demonstrating "actual causation and

reliance.").

Here, Mr. White alleges that he only "purchased the Kroger® *Sport* Sunscreen, Spray,

SPF 50, 5.5-oz" product.  (FAC ¶ 8 [alterations omitted].)  Mr. White, however, purports to bring

a putative class action based on at least sixteen other unpurchased sunscreen products.  (*Id.* ¶ 4.)[4]

The universe of these unpurchased products is comprised of at least five different types of

Kroger-branded sunscreens, in six varying container sizes.  (*Id.*)  The claims Mr. White attempts

to bring with respect to these unpurchased products must be dismissed for lack of standing.

"[W]hen a plaintiff asserts claims based both on products that she purchased and products

that she did not purchase, claims relating to products not purchased must be dismissed for lack of

standing."  *Granfield v. NVIDIA Corp.*, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012)

(collecting cases).  Indeed, in case after case, courts have granted dismissal for lack of standing

where putative class representatives sought to expand the scope of their claims to include

products they did not purchase.  *See, e.g., Larsen v. Trader Joe's Co.*, 2012 WL 5458396, at *5

(N.D. Cal. June 14, 2012) (purchasers of Trader Joe's brand cookies, apple juice, cinnamon rolls,

biscuits, and ricotta cheese lacked standing to bring claims with respect to Trader Joe's Crescent

Rolls "because they did not purchase the Crescent Rolls"); *Hairston v. S. Beach Beverage Co.,*

*Inc.*, 2012 WL 1893818, at *6 n.5 (C.D. Cal. May 18, 2012) (purchaser of various flavors of

beverages lacked standing to bring claims as to particular flavor he did not purchase); *Dysthe v.*

---

[4] It is not even clear what products Mr. White purports are at issue, as he claims to put
Kroger on notice of other sunscreen products that "are not necessarily limited to," the following:
(1) Kroger® *Baby* Sunscreen (Lotion, SPF 50 in 8-oz, and Spray, SPF 50 in 6.3-oz); (2) Kroger®
*Kids* Sunscreen (Spray, SPF 50 in 5.5-oz); (3) Kroger® *Sheer* Sunscreen (Lotion, SPF 70 and 100
in 3-oz); (4) Kroger® *Sport* Sunscreen (Lotion, SPF 30 in 8-oz, Lotion SPF 50 in 1.5 and 8-oz,
Spray SPF 15, 5.5-oz, Spray SPF 30 in 5.5 and 9.1-oz, and Spray SPF 50 in 5.5 and 9.1-oz); (5)
Kroger® *Sunscreen* (Lotion, SPF 30 and 50, in 8-oz, and Spray SPF 30 in 5.5-oz); and (6) Kroger®
*Tanning* Sunscreen (Spray SPF 15, in 5.5-oz).  (FAC ¶ 4.)

14

*Basic Research LLC*, 2011 WL 5868307, at *4 (C.D. Cal. June 13, 2011) (purchaser of Relacore Extra Maximum Strength weight-loss supplement lacked standing to pursue claims relating to other unpurchased weight-loss supplement); *Mlejnecky v. Olympus Imaging Am. Inc.*, 2011 WL 1497096, at *4 (E.D. Cal. Apr. 19, 2011) (purchaser of a Stylus 1030 SW camera lacked standing to sue for a Stylus 850 SW camera she had never purchased even though the two models allegedly suffered from "the same underlying defects . . . and Defendant used the same advertisement for all Stylus cameras."); *Carrea v. Dreyer's Grand Ice Cream*, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011) (purchaser of Drumstick ice cream products lacked standing to pursue claims as to Dibs ice cream products because he had not alleged that he purchased the Dibs products); *Johns v. Bayer Corp.*, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) (purchaser of One A Day Men's Health Formula vitamin product lacked standing to bring claims as to One A Day Men's 50+ Advantage product because he did not plead that he actually purchased the Men's 50+ product).

Mr. White, too, could not have been injured by the sixteen other varietals of sunscreens beyond the sole product he admittedly purchased. *See, e.g.*, *Lorentzen*, 532 F. Supp. 3d at 909 ("A plaintiff who is falsely led to buy a product may claim injury resulting from that purchase; the same plaintiff, however, cannot claim injury from similarly false advertising upon which he or she did not injuriously rely (by buying a similar product or otherwise)."); *see also Wilson*, 961 F. Supp. 2d at 1141–42 (refusing to "assume that each of these subtly different Products is like all the others" and dismissing with prejudice claims relating to products the plaintiffs had not purchased for lack of standing); *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 870–72 (N.D. Cal. 2012) (dismissing claims arising from products that plaintiff did not purchase).

Mr. White does not even allege (nor can he) that he ever purchased or even saw or read the labeling on the other sixteen products, much less suffered a "concrete and particularized" injury-in-fact stemming from these products as required to establish Article III standing. *Lujan*, 504 U.S. at 560. The allegations in the FAC concerning these unpurchased products are therefore ripe for dismissal "with prejudice" for lack of constitutional standing, as Mr. White did not purchase a single one of these sixteen other products and "therefore, as a matter of law, could

15

not have suffered a particularized injury as required by Article III." *Larsen*, 2012 WL 5458396, at \*5.  Mr. White also lacks statutory standing to sue based on these products since he did not purchase them and, thus, he could not have lost money or property in reliance on any representations made on their labels. *See, e.g.*, *Pfizer Inc. v. Superior Court*, 182 Cal.App.4th 622, 632 (2010) (consumers who were not exposed to the allegedly misleading advertisements did not have standing to bring a claim because they could not have parted with their monies as a result of purchase).

Nor can Mr. White use the class action device to plead around the fundamental question of standing. *See Lorentzen*, 532 F. Supp. 3d at 909.  As the Supreme Court has reiterated in an unbroken line of precedents, "'[t]hat a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class "must allege and show that they have personally been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."'" *Lewis v. Casey*, 518 U.S. 343, 357 (1996); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2206 (2021) (a plaintiff lacks standing when she is "not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's 'compliance with [the] law'"); *see also* 28 U.S.C. § 2072 (procedural rules, including those governing class actions, "shall not abridge, enlarge or modify any substantive right.").

In sum, the fundamental question of standing cannot be put off for a later time, as "standing is a jurisdictional element that must be satisfied prior to class certification." *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 964 (N.D. Cal. 2010) (quotations omitted), *citing LaDuke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985).

### 2.    Mr. White Lacks Standing to Pursue Claims for a Nationwide Class.

Mr. White also cannot pursue his national class claims.

Article III standing must be measured "claim by claim." *In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 924 (N.D. Cal. 2015).  Thus, "at least one named plaintiff must have Article III standing to bring a claim under the laws of each state included in the alleged multi-state class . . . . This forecloses claims on behalf of a multi-state class at this time." *Razuki v.*

16

*Nationstar Mortg., LLC*, 2020 WL 1478374, at *3 (N.D. Cal. Mar. 26, 2020) (citations omitted); *see also In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1075 (N.D. Cal. 2015) ("[T]he named Plaintiffs do not have standing to assert claims from states in which they do not reside or did not purchase their mobile device."); *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours and Co.*, 2014 WL 4774611, at *4 (N.D. Cal. Sept. 22, 2014) ("[T]his Court joins the majority of courts in the Northern District in concluding that dismissal is appropriate with respect to claims asserted under the laws of states in which no Plaintiff resides or has purchased products.").

Mr. White, a California resident, lacks standing to bring nationwide class claims where laws of other states, and not California, apply to the class member claims.  (See FAC ¶ 8 ["Plaintiff is a resident of San Mateo County, California."].)  To be clear, Mr. White purports to bring a putative class action on behalf of "[a]ll residents of the United States who, within the applicable statute of limitations periods, purchased the Products for purposes other than resale . . . ."  (*Id.* ¶ 40 [alterations omitted].)  But not only does Mr. White lack constitutional standing to bring his claims under the laws of states other than California, he also "does not specify which state's laws []he means to sue under, nor does []he clearly address the elements of any of these claims.  These claims are all inadequately pleaded and fail to advise the defendant of what it is called to answer for legally."  *Van Mourik v. Big Heart Pet Brands, Inc.*, 2018 WL 1116715, at *2 (N.D. Cal. Mar. 1, 2018).

As Mr. White does not allege that he was injured by Kroger's conduct in any other state other than California, and he does not (nor could he) suggest that California law applies to all putative class members, the claims he purports to bring on behalf of a nationwide class should be dismissed for lack of standing.

## B.   Mr. White Failed to Plead Fraud with Particularity.

Next, the claims must be dismissed on pleading grounds.

The gravamen of Mr. White's consumer protection claims is that Kroger deceived consumers through misleading labeling of certain products.  (See generally FAC.)  The Ninth Circuit has held that in the context of California's unfair business practice laws where the plaintiff alleges a unified course of fraudulent conduct—such as intentionally false advertising of

17

the kind alleged here—and relies on that course of conduct as the basis of the claim, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (quotations omitted).

Claims sounding in fraud, including Mr. White's, accordingly "must state with particularity the circumstances constituting fraud . . . ."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quotations omitted); *see also Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017) (explaining that courts generally consider FAL, CLRA, and the fraudulent prongs of the UCL together "[b]ecause the same standard for fraudulent activity governs all three statutes").  "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false."  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (cleaned up).

There is no question that Mr. White's claims are premised on an alleged unified course of fraudulent conduct.  The operative Complaint alleges that Kroger's "representations and omissions regarding the Products were likely to deceive . . . ."  (FAC ¶ 106.)  Mr. White also insists that Kroger's conduct is "fraudulent" (*Id.* ¶¶ 2, 39, 44-45, 53-55, 58, 63, 74-81, 84, 97, 105, 107, 113, 119, 124, 126); that Kroger "knew" that its representations were "false" or "misleading" (*id.* ¶¶ 36, 55, 69, 75, 85, 94, 106); and that Kroger "intentionally" caused consumers to believe the Sunscreen Products were safe for coral reefs when they were not (*id.* ¶¶ 36, 44, 55, 63, 97, 107, 119, 126.)  Mr. White is therefore tasked with satisfying the heightened pleading requirements of Rule 9(b), which he has plainly failed to do for the reasons below.

### 1.    Insufficient Claims Regarding the One Purchased Product.

Mr. White's claims based on the one product he purchased should be dismissed for failure to meet Rule 9(b)'s exacting pleading standard.  Among other things, the scientific studies which Mr. White cites are insufficiently detailed "to give us some assurance that Plaintiff's theory has a basic in fact."  *Dorfman v. Nutramax Labs., Inc.*, 2013 WL 5353043, at *12 (S.D. Cal. Sept. 23, 2013) (cleaned up).  Why?  Because the studies did not test, nor do they even

18

suggest, that the one sunscreen product Plaintiff purchased actually harms coral reefs.  In other words, none of the publications to which Mr. White cites tested any of the Sunscreen Products themselves, with their particular formulation of ingredients and when used as directed.  *See Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218, at *2–3 (S.D. Cal. Nov. 1, 2012) (studies which the plaintiff contended supported the false nature of the contested product's statements did not clear the heightened particularity bar because none of the studies involved the disputed product); *accord Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 458 (E.D.N.Y. 2013).  Nor does Mr. White allege at what concentrations or combinations the ingredients contained in the purchased product are allegedly dangerous to reefs.  *See Aloudi v. Intramedic Research Grp., LLC*, 729 F. App'x 514, 516 (9th Cir. 2017) (affirming dismissal where no allegations in the operative complaint involved "scientific testing of the actual JavaSLIM product or a product with the same active ingredients as JavaSLIM, in a dose similar to that in JavaSLIM.").  In fact, ***Mr. White never even actually alleges that the single sunscreen product he purchased harms coral reefs or is not safe for reefs in any way***.  Such insufficient detail and outright omissions prove fatal to Mr. White's fraud-based claims with respect to the one product he actually purchased.

While Mr. White alleges that Kroger was "aware of the probable dangerous consequences of its conduct," the operative Complaint is also notably devoid of any *facts* showing that Kroger had any knowledge of falsity at the time the challenged "reef friendly" statement was made.  (FAC ¶¶ 63, 97, 113, 120, 127.)  But Kroger "cannot be held liable for making allegedly false statements if it lacked knowledge that those statements were false at the time they were made." *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 975 n.12 (C.D. Cal. 2014); *see also Resnick v. Hyundai Motor Am., Inc.*, 2017 WL 1531192, at *19 (C.D. Cal. Apr. 13, 2017) ("[J]ust as knowledge is generally required to establish a UCL claim under its fraudulent prong, courts have generally required a defendant to have knowledge of any false statement before allowing an action based on that false statement to proceed.") (collecting cases); *Neu v. Terminix Int'l, Inc.*, 2008 WL 2951390, at *3 (N.D. Cal. July 24, 2008) (granting motion to dismiss plaintiff's fraud-based UCL and CLRA claims where the study

19

plaintiff claimed demonstrated the falsity of the statements made by the defendant post-dated her transaction with defendant).

As such, Mr. White's bare conclusion that Kroger intentionally made false representations regarding the one product he purchased is not supported by any factual allegations, and renders his consumer protection claims wholly insufficient to survive this Motion.

### 2. Insufficient Claims Regarding the Unpurchased Products.

Mr. White's claims based on the sixteen unpurchased products should also be dismissed for failure to satisfy the fundamental pleading requirements of Rule 9(b). "Plaintiff does not allege when during the class period, where, how many, or how many times he purchased [the sixteen other sunscreen products] or was exposed to the alleged misrepresentations. . . . [Indeed,] Plaintiff does not allege that he purchased [any of these sixteen products] at all . . . ." *Edmunson v. Procter & Gamble Co.*, 2011 WL 1897625, at *5 (S.D. Cal. May 17, 2011); *see also Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1122–24 (C.D. Cal. 2010) (dismissing plaintiff's claims for failing to allege specific information about her purchases of the product in question). It follows that Mr. White does not allege much less when or where he purchased these sixteen products, which statements he personally relied upon in his purchase, or how he was damaged by these products.

In addition to the standing issues discussed above, Mr. White's claims respecting these unpurchased products must therefore be dismissed as his failure to assert any details regarding his purchase of these products does not meet the stringent pleading standards for claims sounding in fraud, let alone Rule 8's plausibility standard.

### C. Mr. White's Breach of Implied Warranty Claim Should be Dismissed.

"Unless excluded or modified [], a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1). Unlike express warranties, "liability for an implied warranty does not depend upon any specific conduct or promise on [the defendant's] part, but instead turns upon whether the[] product is merchantable under the code." *Hauter v. Zogarts*, 14 Cal.3d 104, 117

20

(1975).  California's Commercial Code does not "impose a general requirement that goods precisely fulfill the expectation of the buyer.  Instead, it provides for a minimum level of quality."  *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal.App.4th 1291, 1296 (1995) (quotations omitted).  Thus, a plaintiff who claims a breach of the implied warranty of merchantability must show that the product "did not possess even the most basic degree of fitness for ordinary use."  *Mocek v. Alfa Leisure, Inc.*, 114 Cal.App.4th 402, 406 (2003).

At present, Mr. White does not even suggest that that the sunscreen products are not merchantable or fit for use.  All he says on this point is that Kroger "made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and labeling, and through their marketing and advertising," but that "the Products do not conform to the Challenged Representations . . . ." (FAC ¶¶ 117-18.)  Mr. White's unsupported, conclusory allegations fail to state a claim for breach of the implied warranty of merchantability.  *See Swearingen v. Amazon Preservation Partners, Inc.*, 2014 WL 3934000, at *1 (N.D. Cal. Aug. 11, 2014) (dismissing breach of implied warranty claim where plaintiff did not allege that certain products were "not fit for consumption" nor lacked "even the most basic degree of fitness for ordinary use.").

The implied warranty claim should therefore be dismissed as Mr. White has not alleged that the Sunscreen Products are not merchantable under the Commercial Code, e.g., because the sunscreens do not sufficiently absorb or reflect the sun's ultraviolet radiation, provide no protection against sunburn, fail to prevent skin cancer, etc.

### D.    Mr. White's Unjust Enrichment/Restitution Claim Should be Dismissed.

Unjust enrichment does not exist as a standalone cause of action.  *See Fraley v. Facebook*, 830 F. Supp. 2d 785, 814–15 (N.D. Cal. 2011) ("[T]his Court has previously determined that 'there is no cause of action for unjust enrichment under California law.'") (collecting cases); *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 987 (N.D. Cal. 2010) (dismissing plaintiffs' unjust enrichment claim with prejudice as it does not exist as a standalone cause of action); *accord Hill v. Roll Int'l Corp.*, 195 Cal.App.4th 1295, 1307 (2011) ("Unjust enrichment is not a cause of action, just a restitution claim."); *accord Levine v. Blue Shield of*

21

*Cal.*, 189 Cal.App.4th 1117, 1138 (2010).  California law also makes clear that an unjust enrichment claim cannot stand when a complaint's other causes of action fail.  *See, e.g., Robinson v. Wells Fargo Home Mortg.*, 2016 WL 6524403, at *6 (N.D. Cal. Nov. 3, 2016) (dismissing unjust enrichment cause of action where "the allegations in the complaint [were] insufficient to support plaintiffs' claim.").  "Thus, [Mr. White's] unjust enrichment claim does not properly state an independent cause of action and must be dismissed." *Fraley*, 830 F. Supp. 2d at 815.

Restitution is a "'quasi-contractual' claim in order to avoid unjustly conferring a benefit upon a defendant where there is no valid contract." *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1113 (N.D. Cal. 2009).  To the extent Mr. White has pleaded causes of action that give rise to restitution as a remedy, he may seek restitution as a form of relief in connection with those claims, instead of pleading restitution as a standalone cause of action. *See Park v. Welch Foods, Inc.*, 2013 WL 5405318, at *5 (N.D. Cal. Sept. 26, 2013) ("Given that Plaintiffs' quasi-contract theory rests on the same sets covered by their other claims, which also provide for restitution as a remedy, the claim is 'merely duplicative of statutory or tort claims' and must be dismissed.").

## VI.    CONCLUSION

For the foregoing reasons, the Court should dismiss Mr. White's action in its entirety with prejudice as amendment would be futile.

Dated:  January 10, 2022

DAVIS WRIGHT TREMAINE LLP
    Jacob M. Harper
    James H. Moon
    Peter Bae

By:  /s/ Jacob M. Harper
    Jacob M. Harper

*Attorneys for Defendant*
*The Kroger Co.*