1

2

3

4       UNITED STATES DISTRICT COURT

5       NORTHERN DISTRICT OF CALIFORNIA

6       EUREKA DIVISION

7

8    PHILLIP WHITE,                                  Case No.  21-cv-08004-RS (RMI)

9                    Plaintiff,
                                                     **ORDER RE: DISCOVERY DISPUTE**
10           v.
                                                     Re: Dkt. No. 86
11   THE KROGER CO., et al.,

12                   Defendants.

13

14          Now pending before the court is a discovery dispute in a putative class-action case. The

15   matter was adequately briefed (*see* dkt. 86), the Parties then further developed their positions at

16   oral argument (dkt. 89) on April 11, 2023, and the matter is now ripe for decision. The matter at

17   hand boils down to requests by Plaintiff, and by certain third parties ("the O'Briens") who have

18   appeared through Plaintiff's counsel, for "leave to file motions to quash, for a protective order, and

19   for sanctions against Defendant and Defendant's counsel." *See* Ltr. Br. (dkt. 86) at 3. For the

20   reasons stated herein those requests are denied; and, subject to the modifications specified herein,

21   Defendant's third-party subpoenas shall be sustained. Furthermore, due to adverse interests,

22   Plaintiff's counsel, and other attorneys at their firms, shall be disqualified from representing the

23   third parties that are named in Defendant's subpoenas.

24                                      **BACKGROUND**

25          Plaintiff has complained, individually and on behalf of all others similarly situated, that he

26   purchased a certain sunscreen product from Defendant marked as being "reef friendly," while

27   alleging that to be a false and deceptive representation due to the presence of certain ingredients

28   that he alleges to be harmful to coral reefs. *See* Second Amend. Compl. ("SAC") (dkt. 63) at 3-11.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Plaintiff is represented primarily by counsel from the Clarkson Law Firm ("CLF"), while two

2   other firms have been associated into the case as well. *See id*. at 47. Plaintiff and his counsel seek

3   to represent a national class, and a California subclass, of all consumers who may have purchased

4   any of the 14 enumerated sunscreen products for periods of time ranging from 2 to 6 years

5   (depending on each of the several pleaded causes of action). *See id*. at 11-12, 24. The case is

6   currently at the pre-certification phase; the Parties are engaged in discovery practice; and,

7   Defendant has served certain third-party subpoenas in order to explore whether or not Plaintiff's

8   interests, and those of his counsel, are at odds with those of the putative class. *See* Ltr. Br. (dkt.

9   86) at 4-6.

10      The two non-parties involved are Daniel O'Brien and his father, Christopher O'Brien; both

11  men are friends with Plaintiff, and Daniel O'Brien is the husband of Lauren Anderson, an attorney

12  at CLF, which represents Plaintiff in this action, and which has also represented the O'Briens in

13  other actions. *See id*. at 1. Defendant has served subpoenas on the O'Briens seeking both

14  document production and deposition testimony. *Id*. Specifically, Defendant has asked Daniel

15  O'Brien to produce: communications between himself and Lauren Anderson before the date of

16  their marriage on January 22, 2022, as well as between himself and Plaintiff, or any attorney at

17  CLF, that refer to Plaintiff, Christopher O'Brien, clients of CLF, lawsuits in which CLF is

18  involved as counsel, methods of contacting existing or potential clients for CLF, Kroger, class

19  action lawsuits, this lawsuit, or Kroger brand sunscreen products. *See* Ltr. Br., Exh. 2 ("Daniel

20  O'Brien Subpoena") (dkt. 86-2) at 9. Further, Daniel O'Brien was also asked to produce

21  communications and documents reflecting any assurances, promises, or remuneration the O'Briens

22  may have received in connection with this lawsuit, as well as any publicly available posts the

23  O'Briens made relating to Kroger. *See id*. at 10. Daniel O'Brien was also asked to produce the

24  entirety of the lists of invitees and attendees for his wedding to Lauren Anderson (a senior

25  associate at CLF). *Id*. With the exception of the requests that are specific to Daniel O'Brien and

26  his marriage to CLF attorney Lauren Anderson, the subpoena addressed to Christopher O'Brien

27  reflects substantially similar document demands. *See id*, Exh. 4 ("Christopher O'Brien Subpoena")

28  (dkt. 86-4) at 9-12. However, other than those commonalities, the Christopher O'Brien subpoena

1    also seeks documents and communications that refer or relate to any representations, agreements,

2    promises between himself and his son, Lauren Anderson, any other CLF attorney or staff member

3    – or any remuneration or assurances that he (or any entity he may own or operate) may have

4    received from his son, from Lauren Anderson, any other CLF attorney or staff member – in

5    connection with the litigation styled, *O'Brien v. Sunshine Makers, Inc.*, Case No. CIV-SB-

6    2027994 (San Bernardino Superior Court Case) (Filed December 18, 2020). *See* Christopher

7    O'Brien Subpoena at 11-12. Lastly, the Christopher O'Brien Subpoena also sought documents that

8    refer or relate to each occasion he may have participated as a class representative in any other

9    lawsuit. *Id*. at 12.

10        Plaintiff, and the O'Briens (who, as mentioned above, share the same attorneys from CLF)

11   objected to these subpoenas as "sheer harassment supported by baseless, bad faith accusations" on

12   grounds that "[t]here is nothing in the record to suggest that Plaintiff is anything more than a

13   'casual friend' of Daniel O'Brien; nor does [the record as it stands] suggest [that Plaintiff] shares

14   some sort of close personal and financial relationship with [Daniel O'Brien] or Christopher

15   O'Brien." *See* Ltr. Br. (dkt. 86) at 1, 2. However, as explained below, this assertion is not entirely

16   accurate, and the undersigned finds a sufficient basis in the record for Defendant to be permitted to

17   proceed with its subpoenas in order to develop the record as to any possible financial or close

18   personal relationships between Plaintiff, the O'Briens, and their counsel such that Defendant

19   might be able to make use of such information in the forthcoming class certification motion phase

20   of this case.

21        Defendant justifies its subpoenas "as a result of potential conflicts of interest in this

22   putative class action that became apparent during [Plaintiff's] deposition." *Id*. at 4. Specifically,

23   Defendant reports that Plaintiff "made a number of admissions raising serious questions about his

24   ability to fulfill fiduciary duties of loyalty to the class without conflicts of interest, and his honesty

25   in pursuing claims in this matter." *Id*. at 4. Defendant points out: (1) that despite sworn

26   interrogatory responses stating he has served as plaintiff in only one other matter, Plaintiff was

27   made to admit to serving as a class representative in at least two other putative class actions

28   (which Defendant claims to have been forced to discover independently); (2) that when questioned

1   about how he became a plaintiff in these matters, Plaintiff reportedly vacillated, and failed to deny

2   that he was solicited by his former college roommate and close friend (Daniel O'Brien) in each of

3   those matters (including the matters which his counsel reportedly failed to disclose in the

4   interrogatory responses); (3) that Plaintiff also reportedly falsely stated in other discovery

5   responses that he had no documents relating to his relationship with the family of any CLF

6   attorneys; (4) that Plaintiff, Daniel O'Brien, and CLF attorney Lauren Anderson "appear to have

7   an intermingled intimate relationship, according to deposition testimony"; (5) that Plaintiff and

8   Daniel O'Brien, formerly college roommates, have since been travel companions on a number of

9   trips together; (6) that Plaintiff attended Daniel O'Brien's graduation and his wedding to CLF

10  attorney Lauren Anderson; and, (7) that Plaintiff and Daniel O'Brien have remained close friends

11  for at least 10 years. *Id.*

12        Plaintiff and the O'Briens (through their shared counsel) contend that "the O'Briens have

13  no involvement with this lawsuit," and that, Plaintiff first hired CLF in 2020 to file a class action

14  regarding Benefiber supplements – a case that [i]n 2021, he along with another plaintiff and

15  several other plaintiff firms settled [] for $6.5 million." *Id.* at 2. Further, Plaintiff contends that

16  "Defendant has absolutely no basis in fact or reason to claim that Daniel O'Brien 'solicited'

17  Plaintiff for his wife's employer[,] [r]ather, given Plaintiff's success [in] hiring CLF to prosecute

18  the similar Benefiber case, it comes as no surprise that, after Plaintiff learned that the [Kroger

19  sunscreen] [p]roducts may contain ingredients hazardous to reefs in 2021, he reached out to Ms.

20  Anderson because she seemed like the most trustworthy person and he knew that Ms. Anderson

21  worked as an attorney." *Id.* (quoting Plaintiff's deposition testimony) (internal quotation marks,

22  punctuation, and citations omitted). However, at oral argument, when the court asked Plaintiff's

23  counsel why Plaintiff reached out to Ms. Anderson; whether or not Ms. Anderson had represented

24  Plaintiff in his past dealings (including the Benefiber case) with CLF; and, for the names of the

25  attorneys that had represented Plaintiff in the Benefiber case, or the other cases where Plaintiff had

26  been represented by CLF – counsel had no answer and said she could not recall. The reason the

27  court asked these questions is that – given that the Benfiber case had resulted in a substantial

28  settlement – in the order $6,500,000 – it would have made sense for Plaintiff to have reached out

United States District Court
Northern District of California

1   to his own former counsel in that case rather than his friend's wife, assuming she was not his

2   former attorney in that case. It was also surprising to the court that Plaintiff's counsel could not

3   remember the names of the CLF attorneys of record in the Benefiber case, because of the fact that

4   she relied on it and cited to it in her argument and letter brief as proof of the O'Brien's non-

5   involvement in this case; it was also surprising because of the substantial value of the settlement in

6   that case; and then there is the fact that CLF is a relatively small firm (which, according to their

7   website, employs 8 partners and 12 associates). Thus, these are the bases that Defendant relied

8   upon for suggesting that "[d]uring the course of the threesome's long friendship, O'Brien

9   potentially solicited friends and family to serve as 'plaintiffs' for the law firm of his wife, Lauren

10   Anderson." *Id*. at 4.

11          At oral argument, the court first confirmed with Plaintiff's counsel that CLF did, in fact,

12   also represent the O'Briens as to these subpoenas. Plaintiff's counsel confirmed that to be true.

13   Defendant then made a clear and persuasive case that CLF attorneys are conflicted from

14   representing the O'Briens here at the same time as representing Plaintiff and a putative class.

15   Defense counsel explained that – for class certification purposes – the nature of the current

16   conflict is that while the putative class has an interest in candid testimony from the O'Briens about

17   Plaintiff's own interests, and those of his counsel – Plaintiff and CLF have a vested interest in

18   being adjudged to be, respectively, a suitable class representative and suitable class counsel.

19          Plaintiff's counsel had no real response to this concern. Rather than squarely addressing

20   the issue of these adverse interests, Plaintiff's counsel simply repeated the generic statement that a

21   mere "casual friendship" – by itself – does not create a conflict. Plaintiff's counsel also suggested

22   that Defendant – and the court – should be satisfied by the fact that Plaintiff has been deposed and

23   that he has, himself, testified about some of the topics of concern to Defendant. Plaintiff's counsel

24   then repeated her assertion that there simply haven't been any discussions between Plaintiff and

25   the O'Briens about this case, or about his purchase of these products, and that he has never been

26   promised anything by the O'Briens. However, Defense counsel responded that Plaintiff's

27   deposition testimony was far from satisfactory in this regard because Plaintiff testified as to a

28   lapse in memory in response to many questions he was asked; that he provided no real answer

United States District Court
Northern District of California

1    about how he came to be a Plaintiff in this and other cases; that he gave no answer about how

2    often he speaks with Daniel O'Brien (though Plaintiff admitted that they were in "regular" contact,

3    he could not remember if they had spoken in the week leading up to his own deposition); that he

4    could not remember the other lawsuits that Daniel O'Brien had recruited him into; and, that he

5    failed to answer if he had ever discussed monetary compensation with the O'Briens (saying only

6    that he had not discussed it with his attorneys).

7            Plaintiff's counsel then argues that even the suggestion of a conflict of interest in this

8    context goes "beyond what reason or the law should allow." Couching the issue at bar as such –

9    Plaintiff's counsel stated that she had never seen any opposing counsel subpoena the husband of a

10   young associate at her firm who had not even entered an appearance in the case at bar. Between

11   the 32:20 minute mark and the 33:00 minute mark of oral argument, Plaintiff's counsel then

12   appeared to clearly concede that Plaintiff had, in fact, been originally introduced to CLF by Daniel

13   O'Brien when she stated, referring to Lauren Anderson: "I haven't had their family members

14   harassed in the middle of the night with a process server showing up to serve them with a

15   subpoena simply because the Plaintiff was first introduced to a lawyer at the firm through their

16   husband, or somebody that became their husband. That's it, that's the only crux that Defense

17   Counsel has for trying to seek these depositions is that the first time Plaintiff was ever introduced

18   to a member of the Clarkson Law Firm is when he met that person through his friend Daniel

19   O'Brien." In light of this statement, made at oral argument, there appears to be some tension (if

20   not outright conflict) between this concession and the suggestion, advanced in Plaintiff's portion

21   of the letter brief, that Plaintiff had independently selected the CLF law firm in 2020 to file the

22   Benefiber class action litigation, and that "Defendant has absolutely no basis in fact or reason to

23   claim that Daniel O'Brien 'solicited' Plaintiff for his wife's employer." *See* Ltr. Br. (dkt. 86) at 2.

24   //

25   //

26   //

27   //

28   //

**DISCUSSION**

As stated above, Defendant has persuasively argued that CLF attorneys are conflicted from representing the O'Briens in connection with the subpoenas at bar at the same time as representing Plaintiff and the putative class. In advance of class certification – the nature of this conflict is that the class has an interest in candid testimony from the O'Briens about Plaintiff's own interests, and those of his counsel – which appear to be at odds the with the class's interests. The reason that those interests appear to be at odds is manifest in the tangled relationship between Plaintiff, the O'Briens (his longtime friends who may have recruited him as a plaintiff for this and other cases), and CLF. Thus, if Plaintiff's counsel were allowed to represent the O'Briens during their deposition testimony (or in the course of their document production), then the interests of Plaintiff and his counsel would likely diverge from the interests of the putative class. Thus, as explained by Defendant, the conflict exists because Plaintiff and his counsel would have a vested interest (for class certification purposes) to prevent the development of any evidence from the O'Briens that would in any way indicate Plaintiff's unsuitability as a class representative, or CLF's unsuitability as class counsel.

The prohibition against concurrent representation of clients with adverse interests is well established. *See* Cal. R. of Prof. Conduct 3-310(C). Further, given that in class actions, "representative parties [must] fairly and adequately protect the interest of the class," a finding of the sort of conflict described herein would preclude a finding that class counsel are adequate, which is "an implicit requirement of Rule 23(a)(4)." *See Lewis v. Nat'l Football League*, 146 F.R.D. 5, 10 (1992). In other words, "[i]f in maintaining the class action [] the attorneys should be disqualified because of a conflict of interest, then certainly they are not 'generally able to conduct the litigation' and there is inadequate representation of the class's interests." *See In re Fine Paper Antitrust Litig.*, 617 F.2d 22, 27 (3d Cir. 1980) (quoting *North American Acceptance v. Arnall, Golden, Gregory*, 593 F.2d 642, 644 (5th Cir. 1979)). "Moreover, [because] the presence of the alleged conflict would create divided loyalties which would constitute inadequate representation[,] [] Rule 23 [implies that] the trial judge has a constant duty, as trustee for absent parties in the class litigation, to inquire into the professional competency and behavior of class counsel." *Fine Paper*,

United States District Court
Northern District of California

617 F.2d at 27. Indeed, in such actions, the court must undertake a "stringent examination of the adequacy of class representation throughout the entire course of the litigation." *Id*. It is therefore, *a fortiori*, eminently logical to permit Defendant to undertake this inquiry in the course of discovery in advance of class certification.

In that Defendant has asked that Plaintiff's attorneys be disqualified from representing the O'Briens in connection with the subpoenas at bar, the court will begin by noting that requests to disqualify counsel are decided under state law. *See In re Cnty. of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000); *see also Hitachi, Ltd v. Tatung Co.*, 419 F.Supp.2d 1158, 1160 (N.D. Cal. 2006). The decision to grant such a request due to a conflict of interest is within the trial court's discretion. *See Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 105 F. Supp. 3d 1100, 1108 (E.D. Cal. 2015). "Under California law the starting point for deciding a motion to disqualify counsel is the recognition of interests implicated by a motion." *Hitachi*, 419 F.Supp.2d at 1160. Disqualification motions involve such considerations as a client's right to chosen counsel, an attorney's interest in representing a client, and the financial burden on a client to replace disqualified counsel. *Id*. at 1161 (citing *People ex rel. Department of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal.4th 1135, 1145, 86 Cal. Rptr. 2d 816, 980 P.2d 371 (1999); *see also Lennar Mare Island*, 105 F. Supp. 3d at 1108 (stating that a court must weigh these factors, as well as "any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest.")

"Disqualification is a blunt tool meant to encourage wide berth of ethical grey areas, its ruthlessness warranted only after a clear showing of conflict." *Lennar Mare Island*, 105 F. Supp. 3d at 1107. Because "disqualification is [such] a drastic measure, it is generally disfavored and should only be imposed when absolutely necessary." *Id*. (quoting *Concat LP v. Unilever, PLC*, 350 F.Supp.2d 796, 814 (N.D. Cal.2004). "On the other hand, particularly when a party alleges a conflict between two of a firm's current clients, 'the paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar. Consequently, the recognizably important right to choose one's counsel must yield to the ethical

considerations that embody the moral principles of our judicial process.'" *Id.* at 1108 (quoting *State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.*, 72 Cal.App.4th 1422, 1428, 86 Cal. Rptr. 2d 20 (1999)). As the California Supreme Court has explained, "in all but a few instances, the rule of disqualification in simultaneous representation cases is a *per se* or 'automatic' one." *See Flatt v. Superior Court*, 9 Cal. 4th 275, 284, 36 Cal. Rptr. 2d 537, 542, 885 P.2d 950, 955 (1994). In this case, as to the interests of the putative class, and those of the O'Briens – the undersigned finds that disqualification is unavoidable.

Having considered the above-recited authorities in light of the factual posture of the matter at hand, the undersigned finds that lawyers from CLF (or any lawyer from any of the other firms representing Plaintiff) cannot be permitted to represent the O'Briens in the course of Defendant's subpoena proceedings, as doing so would give rise to divided loyalties as well as frustrating Defendant's inquiry due to those attorneys' vested interest (by virtue of representing Plaintiff and the putative class) in being found to be suitable class counsel. Accordingly, it is **ORDERED** that all attorneys employed by or associated with CLF, as well as all attorneys employed by or associated with Plaintiff's other counsel of record in this case are **DISQUALIFIED** from representing the O'Briens in the matter of the third-party subpoenas issued by Defendant in this case. In so deciding, the court finds that it is not unduly interfering with the O'Briens' decision to select counsel of their choice. Indeed, they are free to select any non-conflicted counsel eligible to practice in this court. They are not, however, able to use any of the attorneys employed or associated with the firms representing Plaintiff and the putative class in this case because permitting them to do so would unduly interfere with and frustrate the court's duty to undertake the required "stringent examination of the adequacy of class representation throughout the entire course of the litigation." *Fine Paper*, 617 F.2d at 27. The undersigned also finds that the court's Rule 23 duty to undertake the stringent examination as to the adequacy of class representation easily outweighs the putative class counsel's interest in representing the O'Briens, and that it also outweighs the financial burden (if any) on the O'Briens to replace disqualified counsel.

Beyond that, the court has reviewed Defendant's subpoenas, and finds them (with a single exception) to be reasonable and tailored with sufficient narrowness to undertake the necessary

United States District Court
Northern District of California

inquiry of preparing Defendant to fairly litigate the issue of adequacy (as to both Plaintiff and CLF) for the upcoming class certification inquiry. However, as to the provision in the Daniel O'Brien subpoena seeking the entirety of the invitee and attendee list for the O'Brien-Anderson wedding, the court finds that this provision should be narrowed. After all, it seems unlikely that the wedding photographer, the officiant, or other unrelated individuals should be identified as part of this inquiry. Instead, Defendant is **ORDERED** to narrow the requested list of invitees and attendees to individuals whose identity might be useful to gauging the adequacy of class representation by Plaintiff or his counsel (e.g., Plaintiff, his counsel, and other employees, affiliates, or agents of his counsel). Beyond that, it appears that the identity of any other guests at that wedding would shed no useful light on the inquiry at hand. With that exception, Defendant's subpoenas are **SUSTAINED**, Plaintiff's objections are **OVERRULED**, and Plaintiff's requests for "leave to file motions to quash, for a protective order, and for sanctions against Defendant and Defendant's counsel" are **DENIED**.

      **IT IS SO ORDERED.**

Dated: April 13, 2023

ROBERT M. ILLMAN
United States Magistrate Judge